UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
GERALD C. PROPHETE,

Plaintiff,

-against-

HAYDEE ACEVEDO SMITH, ABRAHAM WATKINS, and ALEX ANDUJAR,

Defendants.
--------------------------------------------------------------X

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*—MEMORANDUM OF LAW**

19-CV-3466 (KAM) (LB)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

MEMORANDUM IN OPPOSITION .......... 1

I. OPPOSITION TO DEFENDANTS' FIRST MOTION .......... 1

II. LIMITED OPPOSITION TO DEFENDANTS' SECOND MOTION .......... 4

III. OPPOSITION TO DEFENDANTS' THIRD MOTION .......... 5

IV. OPPOSITION TO DEFENDANTS' FOURTH MOTION .......... 6

V. OPPOSITION TO DEFENDANTS' FIFTH MOTION .......... 7

VI. NON-OPPOSITION TO DEFENDANTS' SIXTH MOTION .......... 10

VII. LIMITED OPPOSITION TO DEFENDANTS' SEVENTH MOTION .......... 10

VIII. OPPOSITION TO DEFENDANTS' EIGHTH MOTION .......... 11

IX. LIMITED OPPOSITION TO DEFENDANTS' NINTH MOTION .......... 12

CERTIFICATE OF COMPLIANCE .......... 15

## TABLE OF AUTHROTIES

**Cases**

*Alla v. Verkay*, 979 F.Supp.2d 349 (E.D.N.Y. 2013) 6

*Anderson v. Aparicio*, 25 F.Supp.3d 303 (E.D.N.Y. 2014) 4

*Barnes v. Anderson*, 202 F.3d 150 (2d Cir. 1999) 3

*Barnes v. Felix*, Slip Op. No. 23-1239 at 4-5 (May 15, 2025) 11

*Bermudez v. City of New York*, No. 15-CV-3240 (KAM)(RLM), 2019 WL 136633 (E.D.N.Y. Jan. 8, 2019) 12

*BMW v. Gore*, 517 US 559 (1996) 6

*Brown v. City of New York*, 798 F.3d 94, 95-97 (2d Cir. 2015) 11

*Coleman v. Tinsley*, No. 1:10-CV-327, 2012 WL 728310 (N.D. Ind. Mar. 6, 2012) 1

*Consorti v. Armstrong World Industries, Inc.*, 72 F.3d 1003 (2d. Cir. 1995) 5

*Edwards v. City of New York*, No. 08-2199 TLM, 2011 WL 2748665 (E.D.N.Y. July 13, 2011) 5

*Estate of Chamberlain v. City of White Plains*, 960 F.3d 100 (2d Cir. 2020) 2, 13

*Felix v. City of New York,* 344 F.Supp.3d 644 (S.D.N.Y. 2018) 13

*Glenn v. Washington County*, 673 F.3d 864 (9th Cir. 2011) 13

*Gogol v. City of New York*, No. 15 Civ. 5703 (ER), 2018 WL 4616047 (S.D.N.Y. Sept. 26, 2018) 12

*Jean-Laurent v. Hennessy*, 840 F.Supp.2d 529 (E.D.N.Y. 2011) 4

*Lightfoot v. Union Carbide Corp.*, 110 F.3d 898 (2d Cir.1997) 4

*Martinez v. City of New York*, No. 16-CV-79 (NRM) (CLP), 2022 WL 17090267 (E.D.N.Y. Nov. 18, 2022) 5

*Morris USA v. Williams*, 549 U.S. 346 (2007) 7

*Negron v. City of New York*, 976 F.Supp.2d 360 (E.D.N.Y. 2013) 3

*Smith v. City of New York*, 2015 WL 4643125 (S.D.N.Y. Aug. 5, 2015) 12

*State Farm v Campbell*, 538 US 408 (2003) 7

*Tardif v. City of New York*, No. 13 CV 4056 (KMW), 2017 WL 3634612 (S.D.N.Y. Aug. 23, 2017) 12

*Tennessee v. Garner*, 471 U.S. 1, 18-19 (1985) 11

*Thomas v. West,* No. 14 CV 4459-LTS, 2019 WL 1206696 (S.D.N.Y. Mar. 14, 2019) 6

*TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443 (1993) 7

*United States v. White*, 692 F.3d 235 (2d. Cir. 2012) 8

<u>**MEMORANDUM IN OPPOSITION**</u>

**I.**

**OPPOSITION TO DEFENDANTS' FIRST MOTION**

In their first motion, defendants seek to dictate the scope of plaintiff's testimony about the harms he experienced as a result of their misconduct. More specifically, they ask the court to prevent plaintiff from testifying about the physical, mental, and emotional injuries he suffered on the grounds that such evidence can only be offered by an expert. This is simply untrue. Such evidence is routinely offered by plaintiffs testifying as lay witnesses.

First, defendants request that plaintiff be prevented from testifying about his pre-existing physical conditions and the physical pain he experienced as a result of the October incident. The court should reject this request because such evidence can be offered by a lay witness with personal knowledge. *See Coleman v. Tinsley*, No. 1:10-CV-327, 2012 WL 728310, at *5 (N.D. Ind. Mar. 6, 2012) ("[plaintiff's] testimony about his mental and physical health and level of pain, fear, and anxiety prior to, during, and after the incident is not an impermissible self-diagnosis. Rather, he would simply be recounting how he personally felt, physically and mentally, which is testimony rationally based on his own perception."). Obviously, plaintiff has personal knowledge of his own physical conditions and the ability to perceive his own physical pain. Indeed, he is the leading authority on these matters. Plaintiff does not intend to testify as a medical expert or opine that his physical conditions were exacerbated by defendants' misconduct. But he is entitled to testify about what his conditions are and to describe the physical pain he experienced. This is squarely within the scope of permissible lay witness testimony.

Second, defendants request that plaintiff be prevented from testifying about his mental health disorders and the mental and emotional distress he experienced as a result of the October incident. Again, such evidence can be offered by plaintiff testifying as a lay witness. It is undisputed that plaintiff was previously diagnosed with major depressive disorder, anxiety, and bipolar disorder. It is also undisputed that Samaritan Village is a shelter designated for individuals with mental health disorders. *See* Pl.'s Ex. 20 (Portion of Def. Acevedo's deposition testimony). Plaintiff does not intend to testify as a mental health expert or opine that his mental health disorders were exacerbated by defendants' misconduct. But he is entitled to testify about what his disorders are and the mental and emotional distress he experienced. The argument that a person who has been diagnosed with a mental health disorder cannot testify to that fact and explain his mental and emotional experiences defies both logic and law. Surely, the jury is entitled to hear plaintiff's account of who he is and what he experienced. Prior diagnoses do not render such testimony inadmissible—they provide important context for the jury to evaluate the impact of defendants' misconduct.

This testimony is not speculative, nor does it stray into expert territory. It is precisely the sort of lay testimony Rule 701 permits: a straightforward description of what plaintiff experienced, based on his own perception. Courts regularly allow plaintiffs to testify about their own pain, fear, humiliation, and emotional distress. Furthermore, the fact that plaintiff has mental health disorders and was living at a facility designated for individuals with mental health disorders is relevant to the reasonableness of the use of force. *See Estate of Chamberlain v. City of White Plains,* 960 F.3d 100, 109 (2d Cir. 2020) (an officer's knowledge of mental illness is relevant to reasonableness of use of force); *Negron v. City of New York*, 976 F.Supp.2d 360, 369

(E.D.N.Y. 2013) ("[a]nother factor relevant to assessing the use of force in this case is that Morales, while apparently emotionally disturbed, had not committed a serious of dangerous crime.").[1]

In arguing that such evidence can only be offered by an expert, defendants rely on the Second Circuit's decision in *Barnes v. Anderson*, 202 F.3d 150 (2d Cir. 1999). However, *Barnes* involved completely different facts and circumstances. The injury in *Barnes* was a miscarriage, the cause of which was complicated, technical, and unclear in the absence of expert medical testimony. *Id.* at 160. As the Second Circuit explained:

> [P]articularly in the circumstances of the present case, a miscarriage is the sort of complex injury for which expert medical evidence of causation is required. In view of the uncertain timing of the beginning and ending of Mrs. Barnes' pregnancy, the unclear nature of the physical contact she allegedly suffered at the Housing Court, and the fact that Mrs. Barnes was physically assaulted by others subsequent to the incident at the Housing Court but possibly prior to the miscarriage, we do not see how a jury could rationally decide causation in this instance without the aid of expert testimony.

*Id.* at 60.

By contrast, the causes of the injuries at issue here are neither complicated nor technical. Consistent with the regular practice of courts in this circuit, plaintiff should be allowed to testify about the pain, suffering, humiliation, distress, and degradation he suffered during and after the use of force, arrest, and months-long prosecution. Such testimony necessarily includes reference to his pre-existing physical conditions and previously diagnosed mental health disorders, not for the purpose of opining on whether those conditions and disorders were exacerbated by defendants' misconduct, but to accurate describe the harms plaintiff experienced.

---

[1] This will also be discussed in section IX.

Accordingly, the motion should therefore be denied. In the alternative, the court should reserve its ruling and determine at trial whether plaintiff's testimony crosses the line into expert territory.

**II.**

**LIMITED OPPOSITION TO DEFENDANTS' SECOND MOTION**

In their second motion, defendants request that plaintiff be prevented from referring to defense counsel as "city attorneys" or mentioning the City. Plaintiff is happy to refer to defense counsel in whatever way they prefer. However, the court should deny defendants' request to prohibit any reference to the City. Plaintiff asked defendants stipulate to the fact that they were acting under color of state law, but they refused. As this is an element of all 1983 claims, plaintiff must be permitted to elicit testimony that defendants were employed by the City employer, on duty at the time of the incident, *etc.* Additionally, the court should "inform the jury that the Corporation Counsel represents members of the New York City [Department of Homeless Services], an agency of the City of New York." *Jean-Laurent v. Hennessy*, 840 F.Supp.2d 529, 550 (E.D.N.Y. 2011).

Defendants also request that plaintiff be prevented from introducing evidence showing that they will be indemnified by the City. Plaintiff does not intend to offer evidence of indemnification. However, if defendants raise the issue of personal financial resources or inability to pay, they will have opened the door, and plaintiff must be allowed to introduce such evidence. *See Anderson v. Aparicio*, 25 F.Supp. 3d 303, 314 (E.D.N.Y. 2014) (Brown, Mag. J.) ("[t]he law is clear that a defendant may 'open the door' to admission of an indemnity agreement by introducing evidence of financial constraint.").

**III.**

**OPPOSITION TO DEFENDANTS' THIRD MOTION**

In their third motion, defendants seek to prevent plaintiff from requesting a specific dollar amount. This motion should be denied.

The decision to limit or prohibit a request for a specific dollar amount is left to the discretion of the district court. *See Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 912 (2d Cir.1997). While, at times, such a request may be "disfavored[,]" *Consorti v. Armstrong World Industries, Inc.*, 72 F.3d 1003, 1016 (2d. Cir. 1995), "it is best left to the discretion of the trial judge, who may either prohibit counsel from mentioning specific figures or impose reasonable limitations, including cautionary instructions." *Lightfoot*, 110 F.3d at 912.

Plaintiff submits that the court should permit him to request a specific dollar amount, subject to cautionary instructions. *See*, *e.g.*, *Edwards v. City of New York*, No. 08-2199 TLM, 2011 WL 2748665, at *2 (E.D.N.Y. July 13, 2011) (denying a similar defense motion *in limine* in an excessive force, false arrest, and malicious prosecution action); *Martinez v. City of New York*, No. 16-CV-79 (NRM) (CLP), 2022 WL 17090267, at *19 (E.D.N.Y. Nov. 18, 2022) ("while the Court appreciates Defendants' concerns that [Plaintiff's] lawyers might 'anchor' the jury to a particular damages award, nothing prevents Defendants from suggesting to the jury a lower dollar amount should it find for [Plaintiff] on the question of liability. This is particularly appropriate here given that Defendants have indicated that even if the jury finds for Plaintiff on her excessive force or assault and battery claims, they intend to argue that Plaintiff's wrist injuries were neither severe nor substantially caused by these officers' actions.").

## IV.

## OPPOSITION TO DEFENDANTS' FOURTH MOTION

In their fourth motion, defendants request that the court rule on the sufficiency of the evidence to support a punitive damages award.

First of all, defendants' motion is premature. *See*, *e.g.*, *Thomas v. West,* No. 14 CV 4459-LTS, 2019 WL 1206696, at *2 (S.D.N.Y. Mar. 14, 2019) ("[t]he deadline for dispositive motion practice has long passed, and Defendants' arguments as to the relative strength and sufficiency of the parties' evidence on the issue of punitive damages are misplaced in the motion *in limine* context.")

Second, if the jury credits plaintiff's testimony, there will be more than enough evidence to support a punitive damages award *See Alla v. Verkay*, 979 F. Supp. 2d 349, 373, 378 (E.D.N.Y. 2013) (jury properly awarded punitive damages in false arrest and excessive force case where, *inter alia*, defendants "fabricated their accounts of the . . . arrest" and the "evidence at trial . . . was sufficient to support the inference that [plaintiff] posed absolutely no threat."); *BMW v. Gore*, 517 US 559, 575, 576-577 (1996) ("the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct" and "evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law. Our holdings that a recidivist may be punished more severely than a first offender recognize that repeated misconduct is more reprehensible than an individual instance of malfeasance."); *State Farm v Campbell*, 538 US 408, 419 (2003) (the factors "to determine the reprehensibility of a defendant" include whether "the

conduct involved repeated actions or was an isolated incident.") (citations omitted); *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 462, n. 28 (1993) (characterizing as "well-settled" the admissibility of "evidence of [defendant's] alleged wrongdoing in other parts of the country"); *Morris USA v. Williams*, 549 U.S. 346, 355, (2007) ("Philip Morris, in turn, does not deny that a plaintiff may show harm to others in order to demonstrate reprehensibility. Nor do we.").

## V.

## OPPOSITION TO DEFENDANTS' FIFTH MOTION

In their fifth motion, defendants argue that exhibit 17 should be excluded because "the subject disciplinary incidents[,]" or "disciplinary histories[,]" "occurred after the [October] incident" and are not relevant to an issue in the case. Defs.' Mot., ECF No. 115, at 11-12.

To clarify, exhibit 17 should not be characterized as "disciplinary incidents or histories." The evidence is not offered to prove that Defendant Acevedo was disciplined. Rather, it is offered, under Rule 608, to prove that Defendant Acevedo has a character for untruthfulness, and under Rule 404, to prove that she committed the abuse at issue with a particular state of mind and pursuant to a specific plan. Thus, exhibit 17 should be understood as false statements and other similar acts.

With that clarification, plaintiff will turn to defendants' legal arguments. First, they argue that exhibit 17 should be excluded under Rule 403 because "the potential for confusion or prejudice substantially outweighs any probative value." Defs.' Mot. at 13. Second, they argue that exhibit 17 should be excluded under Rule 608 because "DHS did not initiate any formal

proceedings against defendant Acevedo-Smith pertaining to any allegations of dishonesty, nor was there any specific finding that she was dishonest." *Id.*

Defendants' Rule 403 argument re: Defendant Acevedo's other similar acts

It is important to note what defendants do not argue. They do not dispute that Defendant Acevedo's other similar acts are probative of her state of mind or the existence of a plan. They argue solely that the evidence is unfairly prejudicial and confusing under Rule 403.

Defendants do not, however, explain *how* the other similar acts are unfairly prejudicial. They simply assert that the evidence is prejudicial and leave it at that. Surely, a conclusory assertion of prejudice is insufficient to justify exclusion under Rule 403. *See United States v. White*, 692 F.3d 235, 247 (2d. Cir. 2012) ("Rule 403 favors admissibility: evidence is only excluded when its probative value is substantially outweighed by the prejudice of jury confusion.")

While defendants do explain how the other similar acts are confusing, their explanation depends on a false premise. According to defendants, the other similar acts are confusing because they will "create[] a trial within a trial, forcing the jury to deliberate on the necessity of the force used in the unrelated incidents, and distracting from whether the force used in this incident was ultimately reasonable." Defs.' Mot. at 14. This is false. The evidence is not offered to prove that Defendant Acevedo used excessive force against other shelter residents. It is offered to prove that that she committed the abuse at issue here with a particular state of mind and pursuant to a specific plan. The jury will not be "forc[ed] to deliberate on the necessity of the force used in the [January] incidents[.]" In fact, it will be instructed not to do so.

In sum, defendants seek to exclude the evidence of Defendant Acevedo's other similar

acts because it is unfairly prejudicial and confusing. But they do not explain how the evidence is unfairly prejudicial. And though they briefly explain how the evidence is confusing, their argument depends on the false premise that the evidence will require the jury to deliberate on the reasonableness of the force used in the January incidents. Accordingly, the court should deny defendants' motion to exclude the other similar acts.

<u>Defendants Rule 608 argument re: Defendant Acevedo's false statements</u>

Defendants' second argument is also based on a false premise, *i.e.*, that there were no "specific finding[s] that [Defendant Acevedo] was dishonest." Defs.' Mot. at 13. This is a misrepresentation regarding the contents of exhibit 17. If the disciplinary officials found one thing, it was that Defendant Acevedo was dishonest. This was discussed at length in plaintiff's Rule 608 motion and is evident from even a cursory review of exhibit 17.

Moreover, the fact that Defendant Acevedo's false statements were made in a proceeding about excessive force incidents, as opposed to a proceeding about lying, is beside the point. Rule 608 authorizes the admission of conduct that is probative of truthfulness. A lie told in a proceeding about excessive force is just as probative as a lie told in a proceeding about lying. In fact, under the *Cedeno/White* standard, which is discussed in detail in plaintiff's first motion, the fact that Defendant Acevedo's false statements were made in a proceeding about similar excessive force incidents makes them particularly probative of her character for truthfulness when testifying about the use of force against shelter residents. Pl.'s Mot., ECF. No. 116-1, at 4-17.

The court should therefore deny defendants' fifth motion.

## VI.

## NON-OPPOSITION TO DEFENDANTS' SIXTH MOTION

Plaintiff does not oppose defendants' sixth motion. He has no intention of introducing irrelevant evidence or using terms like "testilying."

## VII.

## LIMITED OPPOSITION TO DEFENDANTS' SEVENTH MOTION

In their seventh motion, defendants argue that plaintiff "should be precluded from introducing evidence or making arguments that relate solely to claims that have been dismissed[.]" Defs.' Mot., at 15-16. If the motion ended there, plaintiff would not oppose it. The only claims that have been dismissed are for unreasonable search and denial of medical care, and plaintiff has no intention of introducing evidence that is "related solely" to those claims.

Apparently, however, defendants also argue that plaintiff should be prevented from introducing evidence that merely "pertain[s]" to the failure to intervene and deliberate fabrication claims, which the court ruled were never pled. If defendants' argument was that plaintiff should be prevented from offering evidence that is "related solely" to those claims, plaintiff would have no objection. Since those claims are not being tried, such evidence is irrelevant. But defendants' argument is overbroad in that it seeks to exclude all evidence that merely "pertains" to failure to intervene and deliberate fabrication. This is problematic because, as discussed at length in the briefing on the motion to add the failure to intervene and deliberate fabrication claims, there is significant overlap between the evidence that is relevant to those claims and the evidence that is relevant to the claims to be tried. For example, evidence of fabrication is relevant to both deliberate fabrication and malicious prosecution. Clearly, if

evidence is relevant to one or more of the claims to be tried, it should not be excluded on the grounds that it is also relevant to failure to intervene or deliberate fabrication.

## VIII.

## OPPOSITION TO DEFENDANTS' EIGHTH MOTION

Next, defendants argue that plaintiff should be prevented from offering evidence regarding alleged violations of DHS policies and procedures, which defendants say are "irrelevant to the determination of whether plaintiff's constitutional rights were violated." Defs.' Mot., at 24.

This argument has been made and rejected many times over. As the Supreme Court reiterated earlier this month, in an excessive force action, the primary question is whether the use of force was reasonable, to be determined from the perspective of a reasonable officer at the scene. *Barnes v. Felix*, Slip Op. No. 23-1239 at 4-5 (May 15, 2025). To make this determination, the jury must consider the "totality of the circumstances." *Id.* at 5. Thus, in *Garner*, the Supreme Court relied on police regulations from several jurisdictions to determine whether the use of force violated the Fourth Amendment. *Tennessee v. Garner*, 471 U.S. 1, 18-19 (1985).

The Second Circuit explicitly rejected defendants' argument in an analogous case. In *Brown*, the plaintiff brought an excessive force claim based on an NYPD officer's use of pepper spray during a disorderly conduct arrest. *Brown v. City of New York*, 798 F.3d 94, 95-97 (2d Cir. 2015). On appeal from the district court's grant of summary judgment, the Second Circuit reversed and explained that the patrol guide's instructions on the use of pepper spray were relevant to the reasonableness inquiry. *Id.* at 101, fn. 11 (citing *Garner*, 471 U.S. at 18-19).

There are many other cases with similar holdings. *See*, *e.g.*, *Bermudez v. City of New York*, No. 15-CV-3240 (KAM)(RLM), 2019 WL 136633, at *5 (E.D.N.Y. Jan. 8, 2019) (denying the City's motion to exclude portions of the patrol guide in an excessive force case); *Gogol v. City of New York*, No. 15 Civ. 5703 (ER), 2018 WL 4616047, at *5 (S.D.N.Y. Sept. 26, 2018) (admitting portions of the patrol guide in an excessive force case); *Tardif v. City of New York*, No. 13 CV 4056 (KMW), 2017 WL 3634612, at *6 (S.D.N.Y. Aug. 23, 2017) ("[w]hether the officers violated the NYPD Patrol Guide remains a significant factor to be considered in ultimately determining whether the officers' actions that day were reasonable and subject to qualified immunity."); *Smith v. City of New York*, 2015 WL 4643125, at *3 (S.D.N.Y. Aug. 5, 2015) ("[t]he [NYPD] Patrol Guide has frequently been accepted as evidence of the standard of care to be exercised by a police officer.").

This motion should therefore be denied.

## IX.

## LIMITED OPPOSITION TO DEFENDANTS' NINTH MOTION

Defendants seek to exclude exhibit 11, which is plaintiff's supportive housing application, on the grounds that it is irrelevant, unfairly prejudicial, confusing, and contains hearsay. Defs.' Mot. at 20.

Plaintiff does not oppose the request for exclusion and has offered to withdraw exhibit 11. That said, defendants' assertion that "plaintiff's alleged mental health conditions have no relevance" to the claims to be tried, Defs.' Mot. at 21, is incorrect.

As mentioned in section I, under the excessive force reasonableness standard, the jury must consider the totality of the circumstances surrounding the use of force, including evidence

that defendants knew that plaintiff has mental health disorders. *See Chamberlain,* 960 F.3d at 109; *Negron*, 976 F.Supp.2d at 369; *Felix v. City of New York,* 344 F.Supp.3d 644, 659-60 (S.D.N.Y. 2018); s*ee also Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir. 2011) ("[o]ther relevant factors include the availability of less intrusive alternatives to the force employed, whether proper warnings were given and whether it should have been apparent to officers that the person they used force against was emotionally disturbed."); *Bryan v. MacPherson,* 630 F.3d 805, 826 (9th Cir. 2010) (courts "examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*.") (quotations and citations omitted); *Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001) ("[e]ven when an emotionally disturbed individual is 'acting out' and inviting officers to use deadly force to subdue him, the governmental interest in using such force is diminished by the fact that the officers are confronted, not with a person who has committed a serious crime against others, but with a mentally ill individual.").

On a practical level, this makes sense. When assessing the reasonableness of a defendant's use of force, it matters what the defendant knew or believed about the plaintiff at the time. It is not enough to say that the plaintiff "resisted arrest" or "refused to comply" and leave it at that. If the plaintiff refused to comply with officer commands, and the defendant knew or believed that the plaintiff was a hardened criminal fresh off a murder spree, then it would be reasonable for the defendant to infer that the plaintiff posed a threat sufficient to justify the use of a high level of force. If, on the other hand, the plaintiff refused to comply with commands, and the defendant knew that the plaintiff suffered from schizophrenia and was experiencing auditory

hallucinations then it would not be reasonable to infer that the plaintiff posed a threat sufficient to justify a high level of force.

Ultimately, under the reasonableness standard, the jury must consider the totality of the circumstances, which includes any fact or evidence that is reasonably related to the use of force.

Dated: May 28, 2025

*/s/ Matthew Christiana*
Matthew Christiana

*/s/ Andrew Kopke*
Andrew Kopke

Attorneys for Plaintiff

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(c), I hereby certify under penalty of perjury that, according to Microsoft Word, plaintiff's memorandum of law contains 4273 words, including the caption, table of contents, table of authorities, and this certificate.

Dated: May 28, 2025

*/s/ Andrew Kopke*
Andrew J. Kopke

Attorney for Plaintiff